NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | **Criminal No. 20-01064 (SRC)** |
|  | : |  |
| v. | : |  |
|  | : | **OPINION & ORDER** |
| JUSTIN RODRIGUEZ | : |  |
|  | : |  |

**CHESLER**, District Judge

This matter comes before the Court upon Defendant Justin Rodriguez's ("Defendant" or "Rodriguez") post-verdict motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) or, in the alternative, motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.  (ECF No. 111).  The United States of America ("the Government") has opposed Rodriguez's motions.  (ECF No. 112).  For the reasons that follow, Rodriguez's motions will be denied.

The Superseding Indictment in this action charged Rodriguez with three counts: Count One for possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1); Count Two for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(c); and Count Three for possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (ECF No. 31).  After a four-day trial, a jury found Rodriguez guilty of Counts One and Two and not guilty as to Count Three.

Rodriguez now offers two arguments in support of his motions.  First, he argues that the evidence was insufficient to establish beyond a reasonable doubt that he knowingly possessed the firearms and drugs—a required element of both Counts One and Two.  (Def. Br. at 3–4, 5).

1

Second, he contends that he was prejudiced by trial testimony from his girlfriend, Stephanie Concepcion ("Concepcion"), implying that he has been in jail since his arrest.  (Def. Br. at 6–7). Both arguments fail.

Rodriguez's arrest resulted from a surveillance operation by the Essex County Sheriff's Office on July 2nd, 2020.  That operation, which took place at the corner of Boyd and West Kinney Street in Newark, (Trial Tr., Vol. II, 28:16-18), was led by Sergeant Christopher Bozios ("Bozios").  Bozios testified at trial that, during the operation, he observed a black Audi pull up next to a white BMW.  (Trial Tr., Vol. II, 29:16-21).  He testified that he then saw one of the white BMW's passengers place a handgun on the front passenger floorboard of the black Audi.  (Trial Tr., Vol. II, 30:1-16).  As a result of Bozios' observation, the police followed the black Audi from the corner of Boyd and West Kinney to an apartment building at 475 N. 12th Street in Newark. (Trial Tr., Vol. II, 33:20-24, 35:24-25).  The occupant of the black Audi, later identified as Rodriguez, (Trial Tr., Vol. II, 37:9-18), parked the Audi and entered the apartment building, (Trial Tr., Vol II, 36:11-14), at which point the police were unable to locate him, (Trial Tr., Vol. II, 38:5-8).  The police did, however, conduct a canine sniff of the Audi, which returned a positive result for narcotics.  (Trial Tr., Vol. II, 42:3-18).  They then impounded the Audi, obtained a warrant, and searched the vehicle days later, on July 8th, 2020.  (Trial Tr., Vol. II, 42:19-24, 43:4-5).  At trial, the parties stipulated that (1) the black Audi was registered to Rodriguez at the time of the incident and (2) the police found three firearms and about thirty-four grams of cocaine in the trunk of the vehicle during the search on July 8th.  (Gov. Ex. 500, 501, 502).

In his motion papers, Rodriguez mostly attacks the credibility of Bozios' account of the events on July 2nd, 2020.  He contends that Bozios' testimony was "[t]he only witness testimony

offered to show that [Rodriguez] had any actual interaction with a firearm . . . ."  (Def. Br. at 5).

And Rodriguez argues Bozios' testimony was unbelievable because he testified that he saw the

handgun transaction from one hundred feet away through the obstruction of a car door.  (Def. Br.

at 5).   Moreover, Rodriguez points out that the Government did not offer any evidence

corroborating Bozios' account, such as surveillance footage from the corner of Boyd and West

Kinney Street, footage from the apartment building, or DNA and fingerprint evidence from the

firearms and the drugs.  (Def. Br. at 3–4, 5–6).  He also points out that his girlfriend, Concepcion,

testified that she did not see any firearms or cocaine in the trunk of the black Audi on the morning

of July 2nd.  (Def. Br. at 6).  For Rodriguez, all of this is consistent with his theory of the case:

that the firearms and drugs were placed in his trunk when he pulled alongside the white BMW at

Boyd and West Kinney Street, and, because he did not get out of his vehicle at that time, he did

not know that they were in there.  (Def. Br. at 6).

Rodriguez contends that the alleged infirmities in Bozios' testimony warrant a judgment

of acquittal pursuant to Federal Rule of Criminal Procedure 29(a).  In analyzing a Rule 29 motion,

the Court "review[s] the record in the light most favorable to the prosecution to determine whether

any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the

available evidence."  United States v. Wolfe, 245 F.3d 257, 261 (3d Cir. 2001).  Alternatively,

Rodriguez argues that he should be granted a new trial pursuant to Federal Rule of Criminal

Procedure 33.  "Unlike an insufficiency of the evidence claim, when a district court evaluates a

Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises

its own judgment in assessing the Government's case."  United States v. Johnson, 302 F.3d 139,

150 (3d Cir. 2002).  Nevertheless, "even if a district court believes that the jury verdict is contrary

to the weight of the evidence," it can only order a new trial "if it believes . . . that an innocent person has been convicted."  United States v. Silveus, 542 F.3d 993, 1004–05 (3d Cir. 2008) (internal quotation omitted).

Rodriguez's argument fails under both the Rule 29 and the Rule 33 standards.  As the Government argues, there was ample evidence from which the jury could conclude that Rodriguez was aware of the firearms and the drugs that were found in the black Audi.  This evidence includes Concepcion's testimony that Rodriguez told her that there was marijuana that belonged to him in the trunk of the Audi after it was impounded.  (Trial Tr., Vol. IV, 88:9-20).  The marijuana was found with the firearms and the cocaine in the trunk, thereby strengthening the inference that the firearms and the cocaine were also owned by Rodriguez.  Importantly, the jury could also reasonably infer that all of these items were placed in the trunk of the black Audi on July 2nd because Concepcion testified that she did not see them when she looked in the trunk earlier that morning. (Trial Tr., Vol. IV, 84:16-18, 88:19-22).  Moreover, the Government produced jail phone conversations involving Rodriguez in the days after he was arrested in which he stated that he been "caught" with the firearm and the drugs.  (Gov. Ex. 212, 214, 216, 218).  The jury could reasonably infer that Rodriguez knew about the contraband in his car from his statements on the jail phone calls.  Finally, all of this evidence is especially powerful in light of the facts that (1) the black Audi was registered to Rodriguez and (2) Rodriguez was the only person to operate the vehicle on July 2nd.  United States v. Iafelice, 978 F.2d 92, 97 (3d Cir. 1992) (holding that the defendant's "[o]wnership and operation of [a] car" which contained drugs tended to indicate that the defendant was aware of the drugs, along with other factors).

4

On the other hand, there is no evidence supporting Rodriguez's claim that the passenger of the white BMW put the firearms and the drugs in the black Audi's trunk without Rodriguez's knowledge.  Bozios testified that he observed a handgun being placed on the passenger floorboard, rather than in the trunk, of the black Audi, (Trial Tr., Vol. II, 30:1-16), and there is no testimony or other evidence contradicting his observation.  Nor does Rodriguez identify evidence suggesting any other alternative explanations as to how the guns and the drugs could have ended up in the trunk of the car Rodriguez was driving without him knowing.  As such, whether the evidence is viewed in the light most favorable to the Government or to determine whether there has been a miscarriage of justice, it is sufficient to reasonably conclude that Rodriguez knew about the firearms and drugs in his trunk.

Lastly, Rodriguez argues this Court should grant him a new trial because he was prejudiced by Concepcion's testimony, elicited by the Government, that Rodriguez had been calling her from jail since he was arrested nearly two years ago.  (Def. Br. at 6–7).  In determining whether trial testimony was prejudicial, the Court considers three factors: (1) whether the testimony was "pronounced and persistent, creating a likelihood [it] would mislead and prejudice the jury, (2) the strength of the other evidence, and (3) curative action taken by [the Court]."  United States v. Xavier, 2 F.3d 1281, 1285 (3d Cir. 1993).

Here, all three factors weigh in favor of finding that Concepcion's testimony was not prejudicial.  First, the relevant portion of Concepcion's testimony was brief and did not explicitly reference the fact that Rodriguez was in jail.  (Trial Tr., Vol. IV, 71:6-23); United States v. Golson, 559 F. App'x 157, 160 (3d Cir. 2014) (finding that "a single comment made in the course of a three-day trial" was not "pronounced and persistent" and, therefore, was unlikely to prejudice the

jury).  Second, the Court issued a jury instruction which explicitly stated that the jury could not

infer that Rodriguez was guilty based on the fact that he was incarcerated prior to trial.  (Trial Tr.,

Vol. V, 137:3-9); United States v. Edwards, 439 F. App'x 112, 115 (explaining that courts

"generally 'presume that a jury will follow an instruction to disregard inadmissible evidence

inadvertently presented to it, unless there is an overwhelming probability that the jury will be

unable to follow the court's instructions, and a strong likelihood that the effect of the evidence

would be devastating to the defendant'" (quoting Greer v. Miller, 483 U.S. 756, 767 n.8 (1987)).

Finally, as discussed above, the evidence establishing Rodriguez's guilt on Counts One and Two

was strong, thereby mitigating the likelihood that any bias affected the jury's decision making.

And the jury's decision to acquit Defendant on Count Three of the Superseding Indictment is

evidence that it was, in fact, not biased by Concepcion's testimony.  See United States v. Heatherly,

985 F.3d 254, 268 (3d Cir. 2021) (holding that the admission of potentially prejudicial child

pornography was harmless error because the jury "convicted on some counts, [and] acquitted on

others").

For the foregoing reasons, it is **SO ORDERED** that Defendant's motion for a judgment

of acquittal and motion for a new trial, (ECF No. 111), are both **DENIED**.


       __ s/ Stanley R. Chesler__
       STANLEY R. CHESLER
       United States District Judge

Dated: June 1, 2022